UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :

vs. : Cr No. 08-017 T

BENJAMIN BENIGNO :

MOTION TO SUPPRESS

NOW comes the defendant, Benjamin Benigno, and moves to suppress all of the physical evidence seized by the Newport Police Department and Drug Enforcement Administration from the first and second floors of his home, at 120 Carroll Avenue, Newport, Rhode Island on February 17, 2008. The evidence that the defendant seeks to suppress includes marijuana plants, dried marijuana and equipment used for growing marijuana. The search, which was based on a search warrant issued by a Judge of the Rhode Island State District Court, violated the fourth amendment to the Constitution because the probable cause for the issuance of the warrant was based on a "protective sweep" of Mr. Benigno's home that did not meet the standard for such a warrantless search adopted by the United States Supreme Court in Maryland v. Buie, 494 U.S. 325 (1990). The defendant incorporates by reference the attached memorandum of law in support of motion to suppress.

BENJAMIN BENIGNO,
By his attorney,

/s/ Edward C. Roy, Esquire
EDWARD C. ROY, ESQUIRE
Assistant Federal Public Defender
10 Weybosset Street, Suite 300\
Providence, RI 02903
(401) 528 - 4281
Edward_Roy@fd.org

CERTIFICATION

I hereby certify that I caused a copy of the within to be served upon Sandra R. Beckner, AUSA on the 30th day of June, 2008 by way of ECF case filing.

/s/ Edward C. Roy, Esquire

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :

vs. : Cr No. 08-017 T

BENJAMIN BENIGNO :

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS**

**1. The defendant' s motion to suppress should be granted because the search warrant that authorized the search of the defendant's home was not supported by probable cause as the search warrant affidavit inappropriately included information learned by police officers during a "protective sweep" of the second floor that did not meet the criteria for a such a warrantless search established by the United States Supreme Court in Maryland v. Buie, 494 U.S. 325 (1990).**

The defendant, Benjamin Benigno, is charged in this indictment with manufacturing over 100 marijuana plants in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. In this motion to suppress, the defendant seeks to suppress all evidence seized from his home at 120 Carroll Avenue, Newport, Rhode Island on February 17, 2008 by the Newport Police Department and the Drug Enforcement Administration. The Newport Police and Drug Enforcement Administration seized marijuana plants, dried marijuana and equipment.

On February 17, 2008, in the late evening hours, the defendant's home at 120 Carroll Avenue, Newport, Rhode Island was searched after the Newport Police Department had obtained a search warrant authorized by State District Judge Stephen Erickson. In the afternoon of February 17, 2008, two officers of the Newport Police Department, after claiming they heard "noises" on the second floor of defendant's home, had conducted a warrantless search of the

second floor, and, in the process, observed marijuana plants. The officers relayed their observations to Det. Michael Rego who prepared a search warrant application. The existence of the marijuana plants supplied the probable cause necessary for the issuance of the search warrant. The "protective sweep" of the second floor of Mr. Benigno's home amounted to an unconstitutional warrantless search because the police officers who searched the second floor had no evidence that a dangerous person was present in the home. The remaining allegations in the affidavit submitted in support of the search warrant are insufficient to establish probable cause.

In Maryland v. Buie, 494 U.S. 325 (1990), the Supreme Court sharply limited the ability of police officers to conduct a warrantless "sweep" of the home of a suspect incident to an arrest, authorizing only "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Id. at 327.

In this case, the facts, discussed in detail below, show that the Newport Police had no basis upon which to conclude that a dangerous person lurked within the defendant's home. The "protective sweep", which revealed marijuana plants, supplied the missing link in the probable cause analysis set out in the warrant application. Absent the observation of the marijuana, the warrant application lacked probable cause.

**2. Facts** [1]

On February 17, 2008, Benjamin Benigno, age 29, lived at 120 Carroll Avenue in Newport, Rhode Island with his son, Christian, who is 3. Benjamin Benigno is Christian's sole surviving parent. Christian's mother, Tanya Morris, died in 2005.

---

[1] The facts set forth herein are based upon police reports provided in discovery as well as upon interviews by the Federal Defender office investigator.

At times, Tanya Morris' parents, John and Nancy Morris, would take Christian for visits. Since their daughter's death in 2005, the Morrises had been embroiled in a custody dispute with Benjamin. A Newport County Family Court judge had resolved the custody dispute by awarding full custody of Christian to his biological father, Benjamin Benigno.

On the afternoon of February 17, 2008, Nancy Morris had taken Christian for a visit. Unlike past visits when she had called to let Benjamin know that she would be returning Christian, Nancy Morris did not call ahead. Benjamin Benigno had been asleep when Nancy Morris knocked on the door of his home at 120 Carroll Avenue.

Upon seeing Benjamin, and unaware that he had just awoken, Nancy Morris concluded that he was under the influence of some substance. Nancy Morris contacted Benjamin's mother, Margaret Benigno, and alerted Mrs. Benigno as to her concerns about Benjamin. Margaret Benigno and a friend, Debbie Scott, drove over to Benjamin's home at 120 Carroll Avenue to investigate.

Nancy Morris then drove to the Newport Police Station forty-five minutes later and relayed her concerns about Benjamin Benigno. Two police officers, Smith and Doyle, were dispatched to 120 Carroll Avenue. At the time the two officers arrived, Margaret Benigno and Debbie Scott were playing with Christian and Benjamin's infant daughter, Indica. Indica has a different mother from Christian.

After greeting Benjamin at the door, the two officers eventually entered the first floor of defendant's home at 120 Carroll Avenue. The officers reported that they smelled burning marijuana. Upon entering the home, the two officers stepped into the defendant's living room. The two officers claim that Mr. Benigno appeared intoxicated. Margaret Benigno and

Debbie Scott disagree with the officers on that issue and will testify that Benjamin did not appear to be under the influence of any drugs or alcohol.

While one officer talked with Benjamin and Mrs. Benigno, the second officer began to walk through from the living room to the kitchen, rummaging through drawers and cabinets. A marijuana pipe was seen on a counter top. The pipe was seized and Benjamin Benigno was immediately arrested, without any incident or struggle. One officer remained in the house with Mrs. Benigno, Mrs. Scott and the two children while Benigno was taken out to a police cruiser in handcuffs.

After the arresting officer returned to Mr. Benigno's home, the two officers conferred and then announced to Mrs. Benigno that "We have the right to secure the premises. We think we heard a noise." According to the search warrant application, the following exchange took place between the officers and Mrs. Benigno and Mrs. Scott.

> The Officers then asked Margaret and Debbie if they knew if anyone else was in the house. They stated they did not because they arrived just before the Officers did. The Officers could hear some movement on the second floor. The Officer then went to the second floor to determine if there was anyone else in the residence. Officer Smith then noticed what appeared to be Marijuana plants growing in the room at the North West corner. The Officers found a cat running around on the second floor and no one else.

Search warrant application, at p. 4. (The search warrant is attached hereto as Exhibit A.)

Armed with the evidence discovered during the protective sweep, Det. Michael C. Rego of the Newport Police Department prepared a search warrant application. State District Court Judge Stephen Erickson approved the application, authorizing the search of Mr. Benigno's home.

After obtaining approval from Judge Erickson, the Newport Police Department, assisted by the Drug Enforcement Administration, searched the second floor of 120 Carroll Avenue, finding 162 marijuana plants, dried marijuana and other evidence of marijuana cultivation. The United States Attorney's Office obtained an indictment on March 5, 2008.

**3. The warrantless "protective sweep" of the second floor of the defendant's home by Newport police officers violated the fourth amendment because the officers did not have reasonable suspicion that a dangerous person was located on the second floor of the home.**

In Buie v. Maryland, *supra*, the Supreme Court established the criteria that must exist before police officers can search, for their protection, a suspect's home after making an arrest. In reversing the Maryland state court's use of a probable cause standard to justify such a search the Supreme Court held

> The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.
>
> 494 U.S., at 337.

Although not at issue here, Buie also allows a search of "closets and other spaces immediately adjoining the place of arrest from which an attack could be launched." Id. 484 U.S. at 334. The policy underlying allowing police to conduct a warrantless "sweep" is the need to ensure the safety of officers.

Simply stated, to allow the "protective" search of Benjamin Benigno's home based only upon the tiny footsteps of a cat would be to turn the rule established in Buie on its head. Before law enforcement officers may intrude on the expectation of privacy that a person has in his or

her home, Buie requires that the police have "specific and articulable facts" that demonstrate danger. The footsteps of a cat, even a large cat, do not equate with danger.

The "odor of freshly burnt Marijuana"[2] detected by the patrol officers does not justify the search of the second floor of Mr. Benigno's home. *See* United States v. Jimenez, 419 F. 3d 34, 40 (1st Cir. 2005) ( Odors alone do not authorize a search without a warrant.) (Citing United States v. Sharpe, 470 U.S. 675, 699 n. 12).

The United States Court of Appeals for the First Circuit, in United States v. Paradis, 351 F.3d 21, 29-30 (1st Cir. 2003), affirmed the granting of a motion to suppress on grounds that the seizure of a firearm resulted from an invalid protective sweep.[3] The First Circuit noted that a protective sweep "can last 'no longer than necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises' ". Id. at 29 (citing Maryland v. Buie, 494 U.S., at 335-36).

In Paradis, like in the instant case, the defendant was in custody at the time of the protective sweep. Id. at 29. Here, Mr. Benigno was secured in a police cruiser prior to the point where the Newport Police officers decided to make a protective sweep.

Two Circuit Courts of Appeals have, like the First Circuit in Paradis, held as unconstitutional protective sweeps made in an absence of specific facts showing the presence of dangerous persons in the area searched. *See* United States v. Waldner, 425 F.3d 514 (8th Cir. 2005); United States v. Vargas, 376 F.3d 112 (2nd Cir. 2004).

---

[2] Search warrant affidavit at 1.

[3] It should be noted that while the First Circuit affirmed the suppression of the firearm, which the district court premised on an invalid protective sweep, the case was remanded for hearing on a ground not reached by the district court. United States v. Paradis, 351 F.3d at 30.

In Waldner, the Eighth Circuit Court of Appeals reversed the district court's denial of the defendant's motion to suppress. Waldner was charged with the possession of an illegal silencer discovered during a "protective sweep" performed while officers escorted from his home after service of an *ex parte* restraining order. 425 F.3d , at 515. An officer walked into an office in the basement which was 5 to 10 feet away from where Waldner stood. 425 F. 3d, at 516. In the office, the officer observed a rifle and silencer. Id. The Eighth Circuit held that, absent "any articulable facts that an unknown individual might be in the office, or anywhere else in the house, ready to launch an attack", Id., at 517, the protective sweep exceeded the scope allowed under Buie. Id..

In Vargas, the Second Circuit Court of Appeals affirmed, although on grounds different than those relied up by the district court, the granting of a motion to suppress heroin. 376 F.3d at 113. Acting on a tip that a narcotics courier would be staying at a motel, Drug Enforcement Administration Agents knocked on the door of the motel, which was located near John F. Kennedy Airport. Id. at 113. After interviewing Vargas, agents opened the door of the bath-room, discovering heroin pellets. Id. The district court reasoned that, because Vargas was not under arrest, a Buie search was not permitted as a protective sweep and could only be conducted incident to an arrest. Id. at 114. The Second Circuit disagreed, instead grounding its decision on the following:

> No facts specific to this case support a finding that the agents reasonably believed (1) that anyone other than Moran was present inside the motel room, or (2) that anyone so concealed posed a danger to their safety.

Id. at 116.

Citing Buie, the Second Circuit held that the search of the bathroom could not be upheld where the agents had no reason to believe a dangerous person lurked in the room that was searched. Id. at 117.

Here, the facts demonstrate that the Newport Police officers present at 120 Carroll Avenue had no reason to suspect that a dangerous person was present. Experienced police officers would be able to distinguish between the actual presence of a potentially dangerous person and the harmless footsteps of a cat. As a result, the warrantless search of the second floor of Mr. Benigno's home violated the fourth amendment to the United States Constitution.

**4. The evidence discovered at 120 Carroll Avenue should be suppressed because, after striking the information learned by the police in the "protective sweep", the remaining allegations set out in the search warrant affidavit fail to establish probable cause and the warrant application was prompted by the illegal search.**

Where, as in this case, police officers obtain a search warrant in part based on information obtained as a result of an illegal search of a suspect's home, the First Circuit has adopted a two part test designed to determine whether a motion to suppress should be granted. *See* United States v. Dessesaure, 429 F. 3d 359 (1st Cir. 2005). The first step in the test is that the court "must excise the offending information [from the warrant affidavit] and evaluate whether what remains is sufficient to establish probable cause." Id. 429 F.3d at 367. The second step requires the court to determine the officers would have applied for a search warrant even if the illegal search had not occurred. Id. at 369.

**A) Probable cause does not exist after the information learned in the warrantless protective sweep is excised from the affidavit.**

This court should look to the totality of the circumstances to determine if, after striking

the evidence found in the protective sweep, probable cause existed for issuance of a search warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Reiner, 500 F.3d 10, 15 (1st Cir. 2007).

In this case, an examination of the affidavit submitted in support of the search warrant reveals that, if the evidence derived from the protective sweep is stricken, the Newport Police simply did not have probable cause to justify the issuance of a search warrant. (The entire search warrant is attached hereto as Exhibit A).

The two page affidavit contains eleven separate paragraphs. Of the eleven paragraphs, seven paragraphs contain substantive information that serve as components in the probable cause calculus. Of those seven paragraphs, four deal with evidence based on the "protective sweep" of the second floor of Mr. Benigno's home at 120 Carroll Avenue.

The remaining three paragraphs, examined collectively, do no support probable cause for the issuance of a search warrant. The first paragraph only details a tip from an anonymous source. There is nothing about that person that weighs in favor of a finding of reliability. The second paragraph details information from a confidential informant, who indicated that he "witnessed several individuals purchase Marijuana from Benigno inside 120 Carroll Avenue." Affidavit at p. 1. Although the affiant, Detective Michael C. Rego, states that the informant has given "reliable and credible information", the affidavit lacks the kind of specificity needed by a court to determine the reliability of the informant. There is no way of determining whether Rego referred to information provided in this case when he stated that the had given "reliable and credible information." In addition, the fact that the source was unable to purchase marijuana from Mr. Benigno weighs against his or her reliability.

The penultimate paragraph of the affidavit, which details the observation of unidentified "known drug traffickers" does not in any way support probable cause. No particular "known drug trafficker" is identified. There is no evidence that any of the "known drug traffickers" had in fact purchased or sold drugs at 120 Carroll Avenue. Further, the affidavit does not include the time frame of the observations. One would think that, if the observation of "known drug traffickers" was recent, an experienced detective would make that known to the judge passing on the affidavit.

**B) The warrant was prompted by the illegal search.**

In analyzing those portions of the search warrant affidavit remaining after excision of the evidence resulting from the "protective sweep", this court should be guided by the decisions of the United States Supreme Court in Franks v. Delaware, 438 U.S. 154 (1978) and Murray v. United States, 487 U.S. 533 (1988). In Franks, where intentionally or recklessly false information is presented in support of a search warrant application, a court must strike the false information and examine the remaining allegations to determine if probable cause exists. Franks, 438 U.S. at 171-72.

Murray involved a different, although analogous situation. After an illegal search of a warehouse, police requested a search warrant but did not mention in the warrant application the facts observed during the illegal search. 487 U.S. at 535-36. The Supreme Court phrased the issue in Murray in the following manner.

> The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or information obtained during

> that entry was presented to the Magistrate and affected his decision
> to issue the warrant.

Id.,at 542.

In the end, the Supreme Court remanded Murray for additional findings by the district court as to "whether the warrant-authorized search of the warehouse was an independent source of the challenged evidence in the sense we have described." Id. at 543-44.

In Dessesaure, *supra*, the First Circuit attempted to reconcile the tension between Franks and Murray by looking first to whether or not probable cause existed after the illegally obtained evidence was eliminated. In Dessesaure, the First Circuit found that probable cause existed independent of the illegally obtained evidence and turned to the Murray test. 429 F.3d at 368.

Here, it appears highly unlikely that the Newport Police would have applied for a warrant in the absence of the observation of marijuana plants on the second floor of 120 Carroll Avenue. First and foremost, despite having an ongoing investigation, the Newport Police did not apply for a search warrant before February 17, 2008. Prior to the "protective sweep" on February 17, 2008, the investigation had stalled. A source had tried and failed in an attempt to purchase marijuana from Benjamin Benigno. While the Newport police did have an investigation ongoing, the investigation had appeared to be at a dead end. As mentioned above, while the Newport police did "conduct periodic surveillance" of 120 Carroll Avenue, the affidavit does not mention how recently the surveillance was made.

Perhaps the strongest argument in favor of a determination that the warrant was based on the illegal search is an examination of the affidavit. At least half of the body of the affidavit details the warrantless search of 120 Carroll Avenue.

In the weeks prior to February 17, 2008, the police officers did not observe any illegal activity. After observation of a marijuana pipe, Mr. Benigno was arrested, but there was no suggestion of additional illegal activity at 120 Carroll Avenue. While the officers present at the scene did notice a "strong, damp pungent smell", the affidavit does not attribute that perception to growing marijuana.

In this case, exclusion of the evidence is the appropriate remedy for the court to apply. *See* Wong Sun v. United States, 371 U.S. 471 (1963). Wong Sun directs a trial court deciding whether to suppress evidence after finding a fourth amendment violation to answer the following question: "whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun, 371 U.S. at 488. Here, the last piece of the puzzle was uncovered by the Newport Police and Drug Enforcement Administration as a result of an illegal search of Benjamin Benigno's residence. But for the illegal protective sweep, there would not have been probable cause to seek a search warrant. The connection between the evidence sought to be suppressed and the unjustified search of Benigno's home is so strong that it cannot be concluded that the search is independent of the tainted entry.

Without question, the observation of marijuana plants on the second floor of 120 Carroll Avenue supplied the missing ingredient for the Newport Police Department. A stalled investigation was rejuvenated because of an unconstitutional search of the defendant's home. The defendant urges the court to find that the "protective sweep"of the second floor of 120 Carroll Avenue was made in violation of the fourth amendment to the United States Constitution. In

addition, the defendant requests that the court find that the remaining allegations in the search warrant affidavit did not amount to probable cause for issuance of the search warrant for 120 Carroll Avenue.

**5. Conclusion**

For the reasons set forth above, the defendant respectfully moves that this Honorable Court suppress all the evidence seized based upon the search warrant obtained by the Newport Police Department from State District Court Judge Stephen Erickson.

BENJAMIN BENIGNO,
By his attorney,

/s/ Edward C. Roy, Esquire
EDWARD C. ROY, ESQUIRE
Assistant Federal Public Defender
10 Weybosset Street, Suite 300\
Providence, RI 02903
(401) 528 - 4281
Edward_Roy@fd.org

**CERTIFICATION**

I hereby certify that I caused a copy of the within to be hand-delivered to Sandra R. Beckner, AUSA on the 30th day of June, 2008 by way of ECF case filing.

/s/ Edward C. Roy, Esquire