**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. NO. 08-017 T** |
| | ) | |
| **BENJAMIN BENIGNO** | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS**

The government respectfully urges the Court to deny the defendant's motion to suppress evidence seized from 120 Carroll Avenue, Newport, Rhode Island on February 17, 2008. The evidence was seized pursuant to a valid search warrant supported by probable cause. The defendant contends that the search warrant was based upon evidence observed during an invalid protective sweep; the government disputes his claim. Nonetheless, the government maintains that even without the evidence obtained in the protective sweep of 120 Carroll Avenue, there was sufficient probable cause to issue the search warrant. Lastly, the government asks that the Court find that the officers executing the search warrant at 120 Carroll Avenue were acting in good faith.

## I. FACTS

On February 17, 2008 Nancy K. Morris and Lorraine D. Perry went to the Newport Police Department expressing their concern for the well being of Ms. Morris' grandson, also the defendant's son, Christian Benigno, who was in the defendant's care. They indicated that they had dropped Christian off at the defendant's home and believed the defendant appeared to be under the influence of drugs. Ms. Morris also

advised the Newport Police Department dispatch that the defendant was using and/or growing marijuana in the apartment.

This was not the first time the Newport Police Department had heard of the defendant, as they were in the midst of an investigation into possible drug related activity at his home. Within the month prior, Detective Michael C. Rego, a 14 year veteran of the department, had been told by a reliable and credible confidential informant that he had witnessed several individuals purchase marijuana from the defendant at his home and that the defendant maintained a "marijuana grow" in the same. The detective had also been told by an anonymous source with intimate knowledge of the situation that there was marijuana grown in the home and the defendant and another party, Chanel A. Sosa, had an unusual amount of late night and early morning visitors to the home. Detective Rego received this second piece of information within the three weeks leading up to the execution of the search warrant. Members of the Newport Police Department's Vice/ Narcotics Unit also ran surveillance at 120 Carroll Avenue, observing known drug traffickers frequenting the house.

On the same date that Ms. Morris expressed her concerns, Officers Anson Smith and Ryan Doyle responded to the defendant's address. Officer Smith recognized the defendant from several previous contacts in the past, and was aware that the defendant had a prior criminal history. Officer Smith greeted the defendant and asked him if he could speak with him. The defendant said, "Sure, come on in." Officer Doyle

immediately noticed the odor of freshly burnt marijuana. They also noticed that the defendant's mother, Margaret Benigno, her friend, Debbie Scott, and the defendant's two children, Christian and 9 month old Indica, were in the apartment.

The officers stood just inside the doorway, and Officer Smith began to explain the reason for their visit. The defendant interrupted and said, "Could you come in a little more, so I could shut the door, it's cold outside." Upon stepping further into the residence at the defendant's request, Officer Smith was standing in the living room at the base of a stairway leading to the second floor. From that vantage point, he could see through the kitchen and into the dining room beyond. Officer Smith noticed a marijuana pipe on the kitchen counter with marijuana in it. He also smelled burnt marijuana mixed with the smell of incense, as well as a strong, damp pungent smell. Based upon his training and experience, Officer Smith identified the smell as that of a marijuana grow. Officer Smith noted that the defendant was speaking very slowly and his eyes were bloodshot with dilated pupils. Office Smith concluded that the defendant was under the influence of an intoxicant.

Officer Smith explained to the defendant that there had been a complaint regarding drug use in the home. The defendant proclaimed that he did not use drugs, and had been sober since the birth of his son. Officer Smith asked if he could take a quick look around. The defendant said, "go ahead, look around, there are no drugs in here." Officer Smith walked to the other side of the living room where he could see the glass marijuana pipe more clearly. He was able to see that the pipe contained

marijuana. Officer Smith asked the defendant who lived in the home with him. The defendant said, "I live in the home with my wife, Chanel Sosa, and my kids." Officer Smith confirmed that no one else lived in the apartment and then placed the defendant under arrest.

Officer Smith removed the defendant from the residence and left him under the supervision of another officer in his patrol car. While Officer Smith was outside, Officer Doyle heard noises upstairs that sounded like a sneezing sound and like someone moving around. Officer Doyle asked Mrs. Benigno if anyone else was in the house, but she stated that she was unsure, because she had arrived shortly before the officers.

Upon re-entering the residence to seize the marijuana and speak with Mrs. Benigno, Officer Doyle informed Officer Smith that he had heard something moving on the second floor of the home. In response to the noise, the officers went to the second floor to ensure there were no unknown and potentially dangerous individuals in the house. While checking for individuals, the officers noticed what appeared to be marijuana plants growing in one of the rooms. There was a locked door to another room, and the officers heard the sound of machinery from outside the door. There was also a cat running around the second floor. Upon determining that there were no people on the second floor, the officers secured the residence in anticipation of a search warrant.

Detective Rego submitted an affidavit requesting a search warrant for the defendant's home due to the suspicion that it was being used as a base of operation for

marijuana trafficking. Facts relating to the investigation of the defendant over the past month were included in the affidavit, as well as the observations of Officers Smith and Doyle. The protective sweep of the second floor was described in the search warrant affidavit. Based upon the affidavit of Detective Rego, Justice Stephen P. Erickson issued a search warrant for 120 Carroll Avenue. Upon execution of the warrant, officers discovered a large marijuana grow operation in the defendant's apartment.

## II. PROTECTIVE SWEEP

A protective sweep is warranted when officers encounter articulable facts, when considered along with reasonable inferences, which would warrant a reasonably prudent officer to believe that an area may harbor an individual who could pose a danger to both officers and others on the arrest scene. See Maryland v. Buie, 494 U.S. 325, 334 (1990) (officers entitled to conduct a protective sweep when arresting a robbery suspect who had been hiding in the basement); United States v. Winston, 444 F.3d 115, 118-20 (1st Cir. 2006) (overturning the district court's exclusion of evidence observed during a protective sweep because the defendant was a "potentially dangerous drug dealer," "potentially armed," and had been engaging in suspiciously "casual" behavior at the time of the arrest); United States v. Martins, 413 F.3d 139, 149-50 (1st Cir. 2005) (upholding a protective sweep based upon the presence of a gang-related, shooting victim near the apartment, the presence of children, an odor of marijuana in the apartment, and an adult male voice heard by the officer prior to entering the apartment). An officer does not need to meet the probable cause standard to carry out a

protective sweep; there need only be a reasonable suspicion of danger. See Buie, 494 U.S. at 326.

When the officers performed a protective sweep of the defendant's second floor, they were acting on a reasonable concern for the safety of those on the scene based on the noises heard and the inability of Ms. Benigno and Ms. Scott to confirm whether anyone else was in the house. See Buie, 494 U.S. at 333-34; cf. United States v. Moran-Vargas, 376 F.3d 112, 116-17 (2nd Cir. 2004) (holding protective sweep was invalid when officers did not pat down suspect or hear any noise coming from searched area, indicating nothing caused them to be concerned for safety). The defendant's argument that a cat poses no harm and thus the protective sweep was invalid is meritless. Had the officers not performed the sweep they would not have been able to determine it was a cat on the second floor, and not, for instance, someone trying to quietly move around so as to avoid detection by the police. Furthermore, the First Circuit has acknowledged that some "[d]eference is due to the experienced perceptions of the officers" in determining when there is reasonable suspicion. Martins, 413 F.3d at 150 & n. 4 (quoting United States v. Woodrum, 202 F.3d 1, 6 (1st Cir. 2000)).

The defendant cites to United States v. Paradis, 351 F.3d 21 (1st Cir. 2003) and United States v. Waldner, 425 F.3d 514 (8th Cir. 2005) in support of his motion. His reliance upon those cases is unfounded. In Paradis, 351 F.3d at 29, unlike in the case at hand, when the officer conducted the challenged search, a search of the apartment had already been conducted. Furthermore, the contraband was discovered while moving a

mattress, after the police had already searched "the only logical place someone could hide in the bedroom. . . ." Id. Additionally, in Paradis, there was no reason for the officers to think that another person besides the defendant was in the small apartment. See id. Waldner differs even more dramatically from the case at hand. In that case, the officers were not conducting an arrest, but instead serving a protective order. See Waldner, 425 F.3d at 517. Moreover, while recognizing that a protective sweep was not improper in the context of all protective orders, the Eighth Circuit noted that the officers in Waldner did not have any reasonable suspicion that dangerous individuals were in the house as the defendant was already in their control at the time of the search. Id.

In the case at hand, as already discussed, Officer Doyle heard noises upstairs that led him to conclude someone else might be in the house. Aside from this fact, all of the circumstances surrounding the arrest, including the nature of narcotics trafficking, the obvious recent use of drugs by the defendant, and the presence of children and uninvolved citizens in the apartment, provided the officers with a basis for conducting a protective sweep. See United States v. Hauk, 412 F.3d 1179, 1187-88 (10th Cir. 2005) (protective sweep justified based upon anonymous tip, the observation by officers that another person may have entered the residence, and the fact that the defendant attempted to slam the door in the officer's face); United States v. Smith, 131 F.3d 1392, 1396 (10th Cir. 1997) (holding that the protective sweep was valid when based upon information gained through other officers, an informant and a parole officer). It cannot be ignored that the officers were present in the apartment in response to a report of

endangerment of children. Furthermore, the use and/or growing of marijuana had not only been reported to the Newport Police Department dispatch, but the scent of such activities had also been detected by Officers Smith and Doyle upon their arrival.

In addition to the facts set forth above, the danger posed by the defendant was known to Officer Smith. Officer Smith was aware that the defendant had been arrested for heroin and marijuana trafficking in the past, dangerous activities that often involve co-conspirators and weapons. Also, Officer Smith had provided the narcotics unit with information regarding the narcotics trafficking occurring at 120 Carroll Avenue. Thus, he was aware that it was a location frequented by those involved in the drug world.

Given all of the facts known about the defendant, the events of that day, and the noises heard, it was absolutely reasonable for the officers to suspect that another individual could be present in the house. Thus, the protective sweep was legal and the evidence recovered in it should not be suppressed.

## III. AFFIDAVIT AND SEARCH WARRANT

Even if the Court were to consider the protective sweep illegal, when the evidence observed in the sweep is struck from the affidavit, it remains sufficient to establish probable cause. See United States v. Dessesaure, 429 F.3d 359, 367-69 (1st Cir. 2005).

**A. PROBABLE CAUSE**

Even absent the marijuana plants observed in the protective sweep, the affidavit contained sufficient evidence that a crime had been committed and that evidence of the crime would be found at the place to be searched. See Illinois v. Gates, 462 U.S. 213, 238 (1983)); United States v. Feliz, 182 F.3d 82, 87 (1st Cir. 1999) ("The criterion . . . is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of crime will be found."); United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002) (discussing the method of evaluating probable cause when the affidavit relies upon unnamed informants).

The only evidence observed in the protective sweep was the marijuana plants on the second floor. Even absent the marijuana plants, there was probable cause that illegal activity was occurring at 120 Carroll Avenue based on evidence including, but not limited to, observed presence of drug traffickers at the house, two independent sources indicating marijuana was being grown in the house, one source who viewed the sale of marijuana in the house, the actual presence of marijuana found pursuant to the legal arrest, and the odor of burnt and growing marijuana in the house.

**B. WHETHER THE WARRANT WAS PROMPTED BY THE ILLEGAL SEARCH**

The more difficult question to answer is whether the officers would have sought a search warrant absent the facts discovered during the protective sweep. See Murray v. United States, 487 U.S. 533, 542 (1988); Dessesaure, 429 F.3d at 369. The answer is

complicated by the fact that it necessarily requires answering a hypothetical, since part of the evidence relied upon in the affidavit was discovered pursuant to the invited entry into the defendant's apartment, but prior to the protective sweep. As noted by the First Circuit in Dessesaure, 429 F.3d at 369, Murray suggested that the analysis was a subjective one. However, Murray was decided prior to Devenpeck v. Alford, 543 U.S. 146 (2004) and Whren v. United States, 517 U.S. 806 (1996), both cases which clearly eschewed the use of subjective intent in Fourth Amendment analyses. See Dessesaure, 429 F.3d at 369 & n.9. Nonetheless, the First Circuit in Dessesaure, 429 F.3d at 369, considered the subjective intent of the officers by objective means. The district court cases applying Dessesaure have followed this lead. See, e.g., United States v. Stierhoff, 477 F.Supp.2d 423, 449 (D.R.I. 2007); United States v. Zak, 476 F.Supp.2d 29, 38 (D.Mass. 2007).

In this case, TFA Michael Naylor, a senior narcotics detective at the Newport Police Department and a member of the DEA Taskforce, will testify that had the patrol officers not performed the protective sweep, he nonetheless would have been informed of the defendant's arrest and the discovery of the marijuana pipe with marijuana in it, because of the active and ongoing investigation. TFA Naylor will testify that these discoveries would have prompted him to seek a warrant, in light of all of the other evidence previously developed during the investigation of the defendant. Cf. United States v. Ford, 22 F.3d 374, 378 (1st Cir. 1994) ("It is inevitable that the existence of probable cause would find fruition in the issuance of a search warrant.").

Moreover, it is objectively apparent that the warrant would have been sought regardless of the observance of the marijuana plants. Ms. Morris' request for help came when the officers were already in the midst of an ongoing investigation. The defendant offers no evidence showing this investigation had stalled or was at a "dead-end." Even if the officers had not observed the marijuana plants, they would have been inclined to seek a search warrant based on the "strong, damp pungent smell," which was indicative of a marijuana grow. It is clear that officers suspected drug activity at this address, and had the marijuana plants not been observed, the facts surrounding the legal arrest would nonetheless have provided them with reason to seek a search warrant.

**IV. GOOD FAITH**

Finally, even if the Court were to find the warrant insufficient, the officers from the Newport Police Department reasonably relied upon the warrant's validity and thus acted in good faith. See United States v. Leon, 468 U.S. 897 (1984); United States v. Woodbury, 511 F.3d 93, 99-100 (1st Cir. 2007); United States v. Capozzi, 347 F.3d 327, 333-334 (1st Cir. 2003); United States v. Beckett, 321 F.3d 26, 31-33 (1st Cir. 2003); United States v. Zayas-Diaz, 95 F.3d 105, 113-16 (1st Cir. 1996); United States v. Manning, 79 F.3d 212, 221 (1st Cir. 1996). If the Court were to conclude that the warrant depended upon facts developed during an improper protective sweep, the Leon good faith exception to the exclusionary rule should apply. See United States v. McClain, 444 F.3d

556, 565-66 (6th Cir. 2005)[1] (finding good faith exception applicable despite illegal protective sweep); United States v. Fletcher, 91 F.3d 48, 51 (8th Cir. 1996) (finding good faith exception applicable when illegal seizure of the luggage searched was close enough to the "line of validity" to make the officer's belief in the subsequently issued warrants reasonable); United States v. White, 890 F.2d 1413, 1419 (8th Cir. 1989) (same); United States v. Thomas, 757 F.2d 1359, 1368 (2d Cir. 1985) (applying the good faith exception to a search conducted pursuant to a warrant which lacked probable cause without the illegally obtained evidence) .

The officers were not "objectively unreasonable" in believing they had justification to perform a protective sweep. While the government maintains that the officer's actions were justified, if the Court were to disagree, the Court should nonetheless find that the facts encountered by the officers on the scene were close enough to the line of validity to make the subsequent reliance on the search warrant reasonable. See McClain, 444 F.3d at 566. Further, the officers who conducted the protective sweep had no reason to believe their actions were unconstitutional and Detective Rego disclosed all information to the magistrate in the affidavit. See Thomas 757 F.2d at 1368 (holding warrant was valid when evidence in violation of Fourth Amendment was gathered in good faith and all information was disclosed to magistrate); cf. United States v. Reilly, 76 F.3d 1271, 1281-82 (2d Cir. 1996) (holding

[1] In McClain, 444 F.3d at 565, the Sixth Circuit noted that the Ninth and Eleventh Circuits decline to apply the good faith exception when the affidavit supporting the search warrant is tainted by evidence obtained in violation of the Fourth Amendment. See, e.g., United States v. McGough, 412 F.3d 1232, 1239-40 (11th Cir. 2005); United States v. Vasey, 834 F.2d 782, 789 (9th Cir. 1987).

good faith exception inapplicable where officers failed to disclose all information regarding pre-warrant search to magistrate).

Suppression of the evidence in this case would not serve the primary purpose of the exclusionary rule - to deter police misconduct. See Leon, 468 U.S. at 919. There was no intentional police misconduct; if anything, the protective sweep was a reasonable mistake and the reliance on the validity of the resulting search warrant was in good faith.

## V. CONCLUSION

Based on the foregoing, the Court should find that the protective sweep of 120 Carroll Avenue was legal. In the alternative, the Court should find that the search warrant was valid regardless of the evidence observed during the sweep. Finally, the Court should find that the officers were acting in good faith in the execution of the search warrant. The defendant's motion to suppress should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U.S. Attorney
New York Bar
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5001 (fax)
sandra.beckner@usdoj.gov

**CERTIFICATION**

On July 10, 2008, I caused the within "Government's Response in Opposition to Defendant's Motion to Suppress" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Edward C. Roy, Esquire
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903
Tel: (401) 528-4281
Edward Roy@fd.org

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj